UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 14-139-WOB-CJS

SHARON E. LUGGEN                                                    PLAINTIFF

v.                    REPORT AND RECOMMENDATION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                    DEFENDANT


* * * * * * * * * * * *

Plaintiff Sharon E. Luggen brings this action under 42 U.S.C. §§ 405(g), challenging Defendant Commissioner's final decision denying her application for benefits under Title II and Title XVI of the Social Security Act.[1]  (R 1).  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 7) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 8) be **granted.**

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

---

[1]Plaintiff also filed an application for disabled widow's benefits, but admits her eligibility for those benefits expired on May 31, 2007.  (R. 7, at 2).  Accordingly, she does not appeal the Commissioner's decision in that regard.

supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. §§ 423(a)(1), 1381 *et seq.* The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing*

20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*.  Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (*citing Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*.  (*quoting Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on January 1, 2009, when she was 52 years old. (Administrative Record (A.R.) 33-34, 54).  Plaintiff graduated from high school and completed a one-year cosmetology program.  (*Id.* at 34, 369).  Plaintiff has previous work experience as a cosmetologist.  (*Id.* at 48).  On her application, Plaintiff asserted the following conditions limit her ability to work:  irritable bowel, diverticulitis, rheumatoid arthritis, and high blood pressure.  (*Id.* at 309).  Plaintiff also testified to taking zoloft for depression and anxiety.  (*Id.* at 36).

3

The medical record evidence is somewhat limited, and is adequately summarized by the ALJ

as follows:

> The claimant has lived with chronic diarrhea since her adolescence, but the record suggests that these symptoms [have] grown worse over time. In February 2009, the claimant first consulted with Tri-State Gastroenterology Associates (*see* Exhibits 1F/5 and 2F). At that point, the claimant reported having six to eight bowel movements each day. The notes from this first consultation indicate that the claimant had realized improvement of her irritable bowel syndrome[] from taking Bentyl and fiber [in the past], but had received no treatment for several years prior to that appointment. (Exhibit 1F/5).
>
> On February 20, 2009, the claimant underwent a colonoscopy, the results of which were interpreted as normal other than diverticulosis in the claimant's sigmoid colon (Exhibit 1F/9-10). Given these results, the claimant was prescribed Bentyl once again (Exhibit 1F/8). However, the claimant stopped taking Bentyl because it made her too sleepy (Exhibit 1F/11). In December 2009, the claimant reported to her primary care doctor that she continued to experience chronic diarrhea (Exhibit 3F).
>
> In December 2010, the claimant saw Christopher Smith, M.D., for pain in her upper extremities (Exhibit 3F). However, Dr. Smith found no sign of degenerative joint disease in the claimant's hands or wrists.
>
> In June 2011, the claimant first consulted with Christopher Colglazier, M.D., regarding pain in her shoulders and hands (Exhibit 4F). X-rays taken of the claimant's shoulders and hands at this time revealed no evidence of joint space narrowing, erosions, fractures, demineralization or osteophyte formation (Exhibit 4F). Dr. Colglazier diagnosed the claimant with inflammatory features. For this, she received a tapered dose of prednisone, which temporarily relieved her pain. When she returned to Dr. Colglazier, he prescribed her Plaquenil. When he saw the claimant in September, Dr. Colglazier diagnosed her with "unspecified polyarthropaty or polyarthritis involving multiple sites (Exhibit 5F). He also indicated that she had failed treating with Plaquenil and switched her to sulfasalazine.
>
> On October 8, 2011, Nicole Kershner, M.D., examined the claimant on behalf of the Disability Determination Service (Exhibit 6F). Dr. Kershner's examination revealed "no clubbing, cyanosis, or edema" in the claimant's extremities. She also described the claimant's joints as "normal without swelling and no [apparent] rheumatologic changes." She further reported that the claimant had normal muscle tone and strength throughout her body without redness, swelling, spasm or tenderness. She documented that the claimant nearly had a full range of motion in her shoulders.

4

In November 2011, the claimant visited Christopher Smith, M.D. [for a six month check up for hypertension] (Exhibit 7F). During this visit the claimant apparently reported no abdominal pain or diarrhea nor any musculoskeletal complaints.[2]

In February 2012, the claimant returned to Dr. Colglazier again complaining of joint pain and stiffness (Exhibit 8F). In his notes from this visit, Dr. Colglazier indicated that the claimant had responded to sulfasalazine but that it caused gastrointestinal side effects. Therefore, Dr. Colglazier switched her to meloxicam. Subsequent notes from a different physician indicated that the claimant's arthritis medicine did not work well (Exhibit 9F).

In April 2012, the claimant visited Sarah Flora, M.D. (Exhibit 9F). Physical exam was normal, and Dr. Flora specifically noted she found no evidence of edema (Exhibit 9F, page 7). Still, Dr. Flora diagnosed the claimant with rheumatoid arthritis and prescribed her acetaminophen-codeine. The claimant returned to Dr. Flora in August 2012, at which time she endorsed symptoms of joint pain, nausea and diarrhea, but Dr. Flora again noted no clinical findings to support these complaints (Exhibit 10F).[3]

(A.R. 15-16).

On July 26, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. (*Id.* at 204-15). These claims were denied initially and again upon reconsideration. (*Id.* at 132-39, 148-58). Plaintiff requested and was given a hearing before an ALJ on March 4, 2013. (*Id.* at 29-53). During this hearing, the ALJ heard testimony from Plaintiff and a vocational expert (VE). (*Id.*). After receiving testimony and reviewing the record, the ALJ issued a written decision on March 27, 2013, finding Plaintiff was not disabled within the meaning of the

---

[2]This treatment note indicates Plaintiff had seen Dr. Colglazier for her arthritis and is currently on sulfasalazine with improvement, but also indicates Plaintiff had subjective complaint of "joint swelling and arthralgias." (A.R. 399). On examination, Dr. Smith noted Plaintiff did not exhibit edema. (A.R. 400).

[3]The ALJ's citation to an August 2012 visit with Dr. Flora is not supported by the record. Instead, the exhibit referenced is a patient care coordination note, *see* A.R. 423, which does not indicate the purpose of the note and does not reference an appointment on this date. The subsequent pages of the exhibit are notes of Plaintiff's first appointment with Dr. Flora on April 24, 2012. (*See* A.R. 424-27). The record does not evidence Plaintiff saw Dr. Flora on more than this one occasion.

Social Security Act.  (*Id.* at 12-23).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id.* at 1-5).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 15-22).  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since January 1, 2009–the alleged onset date of her disability.[4]  (A.R. 15).  At step two, the ALJ determined that Plaintiff had the severe impairments of: irritable bowel syndrome (IBS) and inflammatory arthritis.  (*Id.*).  The ALJ found Plaintiff's hypertension and anxiety were non-severe impairments.  (*Id.* at 16-17).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation, and she specifically referenced her consideration of Listings 14.00 and 14.09.  (*Id.* at 18).  At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work except that she has the following additional limitations: "she can occasionally climb ladders, ropes or scaffolds. She must avoid even moderate exposure to hazards, such as machinery and unprotected heights.  (*Id.* at 18-22).  In reaching this RFC, the ALJ considered claimant's testimony, the third-party statement of her daughter, the documentary evidence, and the medical opinion evidence.  (*Id.*).  After consideration of the complete record, the ALJ imposed limitations in the RFC that she found supported by the evidence. (*Id.*).

---

[4] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015.  (A.R. at 15).

6

At the hearing, the ALJ heard testimony from an impartial VE who stated that, based on the RFC provided by the ALJ, Plaintiff could perform her past relevant work.  (*Id.* at 47-50). Accordingly, the ALJ concluded that Plaintiff was not "disabled" for social security purposes and did not proceed with step five.  (*Id.* at 22).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on May 30, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's March 27, 2013, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.* at 1-6).  On July 25, 2014, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not in accordance with the law and was contrary to the evidence.  (R. 1).

Plaintiff has filed a Motion for Summary Judgment and a Reply, arguing that the ALJ erred by:  failing to explain how she arrived at the RFC; failing to properly weigh the medical opinion evidence; improperly evaluating Plaintiff's credibility; and relying on a vocational expert's response to an inaccurate hypothetical question.  (R. 7, at 5-14).  Each of these arguments is addressed below.

## III.    ANALYSIS

### A.    The ALJ did not err in determining Plaintiff's RFC

Plaintiff's first two arguments are related and thus will be considered together.  Plaintiff argues that the ALJ erred in her RFC determination because she failed to explain, in narrative form, how she determined Plaintiff had a RFC to perform a limited range of light work.  Plaintiff points specifically to the ALJ's failure to explain how she reached the stated RFC that did not provide for any work-related limitations stemming from Plaintiff's IBS.  She also argues that the ALJ erred in

her consideration of the medical opinions in finding her arthritis did not limit her ability to perform light work.

### 1.     The ALJ considered Plaintiff's IBS

Plaintiff argues that the ALJ erred by not explaining how she determined an RFC for light work that did not provide a limitation for "extra breaks" due to her IBS, in violation of SSR 96-8p. SSR 96-8p, provides in part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p,1996 WL 374184, at *2 (July 2, 1996).  Contrary to Plaintiff's contentions, the ALJ discussed evidence within the decision that supported her RFC determination.  The ALJ also discussed Plaintiff's symptoms, explained where Plaintiff's reported limitations were inconsistent with the other evidence of record and explained her conclusions.  The ALJ's references to both the documents of record and the hearing testimony reveal that all of Plaintiff's limitations which the ALJ found credible, including her IBS, were considered in formulating the RFC.

With respect to her IBS, the ALJ explained:

> The claimant has also had bowel trouble since her adolescence (Exhibit 2E). Recently, the claimant has experienced increased difficulty controlling her bowels. Although acetaminophen-codeine helps slow down her bowels, she still requires a bathroom break a couple of times each day even when she takes her medicine.  At times, she has had to leave work or go home to accommodate her bathroom needs. She has devised several [] alternative methods of controlling her bowels, including not eating and taking Imodium before she goes out in public.  (Exhibit 2F).

8

. . .

Her work activity following her alleged onset date detracts from the credibility of the claimant's allegations as to the intensity, persistence, and limiting effects of her impairments. Although the claimant's work has not constituted substantial gainful activity, it nonetheless indicates that her impairments have not precluded her from working. The claimant has experienced chronic diarrhea since her adolescence but managed to work with it for many years (Exhibits 17E and 1F/5). Since her alleged onset date, the claimant has worked part-time as both a cosmetologist and a cashier. As of September 29, 2009, over nine months after her alleged onset date, the claimant still worked twenty-four to thirty hours a week as a cosmetologist (Exhibit 2F). She currently works a couple of hours each week as a cosmetologist. Although her impairments, particularly her irritable bowel syndrome, have impeded her performance of these jobs, her persistence indicates that her impairments have not rendered her disabled.

Nor does medical evidence support the claimant's contention of disability. Specifically, the record does not illustrate how the claimant's impairments have worsened to preclude her from working. . . . Finally, results of a colonoscopy were interpreted as showing only diverticulitis (Exhibit 1F/9-10).

(A.R. 19-20).

This discussion evidences that the ALJ considered Plaintiff's IBS in reaching the RFC. The fact that the ALJ did not incorporate into the RFC a requirement for frequent, unscheduled bathroom breaks does not render the RFC not supported by substantial evidence. *See Hough v. Comm'r of Soc. Sec.*, No. 12-14678, 2014 WL 764634, at *11 (E.D. Mich. Feb. 25, 2014) (plaintiff failed to cite to evidence in record suggesting normal breaks in work day could not accommodate her IBS symptoms); *Cagle v. Astrue*, No. 1:11-cv-217, 2012 WL 3201960, at ** 5-7 (E.D. Tenn. July 16, 2012) (finding IBS to be a severe impairment did not require specific limitation in RFC where no evidence that it posed a limitation), *adopted by* 2012 WL 3185932 (E.D. Tenn. Aug. 3, 2012). In fact, the claimant's own testimony explained that when she takes her medicine she needs only a couple of bathroom breaks a day. (A.R. 46). The mere diagnosis of an impairment does not render

an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual. *See Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988).

Further, no medical source has opined that Plaintiff's IBS symptoms require extra breaks. Contrary to Plaintiff's suggestion, Dr. Flora did not opine Plaintiff needed three to four breaks a day to accommodate her IBS.  Dr. Flora's assessment was directed mainly to Plaintiff's rheumatoid arthritis.  In fact, Dr. Flora mentioned Plaintiff's IBS only in the section asking her to describe any other limitations that would affect Plaintiff's ability to work a regular job on a sustained basis, wherein she did not provide further limitations, but stated:  "[Plaintiff] also has IBS causing bowel issues at times but currently fairly well controlled."  (A.R. 432).  Thus, the ALJ's RFC that did not specifically incorporate limitations for IBS symptoms was supported by substantial evidence that demonstrated her IBS was "fairly well controlled."

> **2.     The ALJ properly considered the medical opinion evidence in determining Plaintiff's RFC**

Plaintiff argues that the ALJ erred in her consideration of the opinion evidence in reaching a determination that Plaintiff had an RFC to perform a range of light work despite her symptoms from IBS and rheumatoid arthritis.  Plaintiff argues that the ALJ erred in her analysis because she failed to give controlling weight to the opinion of Dr. Flora, her treating physician, and failed to give good reasons for the weight she gave Dr. Flora's opinion.  (R. 7, at 8-10).  She also argues that the ALJ improperly gave great weight to a nonexamining doctor who did not have her complete medical record and incorrectly found the consulting examiner's opinion supported an RFC for limited work.

Plaintiff is correct that "[g]enerally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2)).  However,

treating physicians' opinions do not automatically bind the ALJ: these opinions are only entitled to controlling weight when they are supported by objective medical evidence and consistent with other substantial evidence in the record, *Wilson*, 378 F.3d at 544, and not contradicted by substantial evidence to the contrary. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990); *see also* C.F.R. § 416.927(d)(2).

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization. *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (*citing Wilson*, 378 F.3d at 544). If the ALJ finds the treating physician's opinion fails to meet these conditions, she may discredit that opinion, so long as she gives good reasons for doing so. 20 C.F.R. § 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (*quoting* Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-40 (6th Cir. 2010).

In determining what weight to give the opinion of a non-treating physician, the ALJ must apply the same factors considered for treating physicians' opinions, i.e., the opinion's supportability and consistency, and the physician's specialization. *See Steagall*, 2015 WL 64654, at *3, (*citing Gayheart*, 710 F.3d at 379). "The ALJ cannot apply greater scrutiny to the opinions of treating

sources over those of non-treating sources." *Id*.  However, the "good reasons" requirement does not

apply to a nontreating source.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Here, the ALJ explained her consideration of the medical opinion evidence as follows:

As for the opinion evidence, the undersigned gives great weight to the assessment of
State agency medical consultant Allen Dawson, M.D. (Exhibits 4A and 5A).  Dr.
Dawson limited the claimant to performing medium work subject to additional
postural and environmental limitations.   While the undersigned has limited the
claimant to performing work at the light exertional level, the undersigned has not
found compelling evidence to justify further divergence from Dr. Dawson's findings.
Therefore, the undersigned has incorporated Dr. Dawson's postural and
environmental limitations into the claimant's residual functional capacity.

The undersigned gives significant weight to the assessment of Nicole Kershner,
M.D., who examined the claimant on behalf of the Disability Determination Service
(Exhibit 6F).  She determined that the claimant could stand for about one hour and
walk at a steady pace for ten minutes before having to rest.  She also indicated that
the claimant could lift twenty pounds and could drive and handle objects without
difficulty. The undersigned has given this assessment significant weight because Dr.
Kershner supported her conclusions with detailed findings from her examination of
the claimant.  Her report also indicates that D. Kershner considered limitations
espoused for the claimant by other doctors, which lends further credibility to her
assessment.

The undersigned gives little weight to the assessment of Dr. Flora (Exhibit 11F).
Among the restrictions that she espoused for the claimant, Dr. Flora asserted that the
claimant could stand and walk for less than a combined total of two hours during an
eight-hour workday.  She also claimed that the claimant required the option to sit or
stand at will, would need to take several unscheduled breaks each day and would be
expected to miss work approximately twice a month.  However, the undersigned has
given little weight to Dr. Flora's opinion because her own progress notes do not
support her conclusion.  Specifically, Dr. Flora indicated that "joint warmth," "joint
deformity" and "tenderness" stood as positive objective signs of the claimant's
impairments and limitations. However, nowhere in the progress notes does Dr. Flora
document these objective signs (*see* Exhibits 9F and 10F).  Therefore, due to the
inconsistency between her treatment notes and her assessment, the undersigned gives
little weight to Dr. Flora's opinion.

(A.R. 21).  Plaintiff argues that the ALJ erred in her consideration of each of these doctors' opinions.  As discussed below, the ALJ properly considered the medical opinion evidence, and the RFC determination is supported by substantial evidence.

### a.    Dr. Flora

Plaintiff argues that the ALJ erred in not giving controlling weight to Dr. Flora's medical opinion.  The Commissioner responded that because the administrative record contains only one treatment note from Dr. Flora, it is questionable whether she qualifies as a treating provider.  (R. 8, at 7).  The Commissioner further argues that even if Dr. Flora is a treating provider, the ALJ gave good reasons for discounting her opinion, stating it contradicted her own treatment notes.

The Sixth Circuit recently explained, "[a] physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'"  *Reeves v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 4231600, at *5 (6th Cir. July 13, 2015) (*quoting* 20 C.F.R. § 404.1502; *citing Smith*, 482 F.3d at 876); *see also Mireles v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 4503502, at *2 (6th Cir. July 24, 2015) (no error in finding doctor not treating source when saw claimant no more than three times); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (opinion rendered after single visit does not suffice to establish a treating physician relationship even if subsequently became a treating source because question is whether there was an ongoing relationship at the time the opinion was rendered).

Here, since there is no evidence that Plaintiff saw Dr. Flora on more than one occasion before she rendered her RFC assessment, Dr. Flora does not qualify as a treating provider and any medical

opinions contained in her assessment are not entitled to controlling weight.[5] *Reeves*, 2015 WL 4231600, at *6 (*citing Smith*, 482 F.3d at 876 (*quoting* 20 C.F.R. § 404.1502) (holding that a physician who examined the claimant only once and completed a single "physical capacity evaluation" was not a treating source)). Thus, to the extent Plaintiff has cited cases finding error in failing to give a treating source's medical opinion controlling weight, these cases are not applicable to the analysis of Dr. Flora's RFC assessment.

In her Reply, Plaintiff does not point to evidence demonstrating that Plaintiff treated with Dr. Flora on more than just one occasion, but instead argues it is illogical for the Commissioner to argue Dr. Flora's opinion is not entitled to controlling weight because she only saw Plaintiff on one occasion, while giving great weight to the opinion of Dr. Dawson who never examined Plaintiff. (R. 11). Plaintiff, however, misconstrues the Commissioner's argument. The Commissioner did not argue Dr. Flora's opinion should not be considered, only that it was not entitled to be weighed as that of a treating physician.

Although not entitled to controlling weight as a treating physician's opinion, the ALJ was still required to consider Dr. Flora's medical opinion. Regardless of its source, every medical opinion is considered by the ALJ in evaluating a claimant's social security claim. 20 C.F.R. §§ 404.1527(c); 416.927(c). Here, the ALJ considered Dr. Flora's medical opinion and found it was not supported by her own progress notes. Specifically, the ALJ noted "Dr. Flora indicated that 'joint warmth,' 'joint deformity' and 'tenderness' stood as positive objective signs of the claimant's impairments and limitations. However, nowhere in the progress notes does Dr. Flora document these

---

[5]While Dr. Flora noted in her February 21, 2013, RFC assessment that Plaintiff had been a patient since April 2012, she did not answer the question completely as she did not set forth the nature and frequency of the contact. (A.R. 428). As discussed, the record evidence does not evidence that Dr. Flora saw Plaintiff more than once before completing the assessment.

14

objective signs (*see* Exhibits 9F and 10F)." (A.R. 21). Instead, Dr. Flora's treatment notes indicate Plaintiff's subjective complaints of joint swelling and pain, but Dr. Flora's examination found "[s]he exhibits no edema." (A.R. 418, 424-25). Thus, the ALJ found Dr. Flora's opinion was entitled to little weight because of the inconsistency between her treatment notes and the RFC assessment. (*Id.*).

In addition, to the extent the Plaintiff is arguing that the ALJ erred in not setting forth all of the factors considered in determining the weight he assigned to the opinion of Dr. Flora or failed to articulate "good reasons" for rejecting the opinion, there exists no regulation requiring him to do so. In *Smith*, the Sixth Circuit held that the Social Security Act's requirement that ALJs "give good reasons" for the weight given to medical opinions applies only to treating sources. *Smith,* 482 F.3d at 876. In reaching this conclusion, the Sixth Circuit emphasized that the applicable regulations classify medical sources into three types: nonexamining sources, nontreating sources, and treating sources–in recognition "that not all medical sources need be treated equally." *Id.* at 875. Therefore, although the Social Security Administration promises claimants that ALJs "will evaluate every medical opinion [they] receive," 20 C.F.R. §§ 404.1527(c); 416.927(c), the promise to articulate "good reasons" for the weight given to a medical opinion extends only to the opinions of treating sources. *See Smith*, 482 F.3d at 876.

The record evidence does not demonstrate that Dr. Flora saw Plaintiff on more than one occasion before rendering her RFC assessment, and thus Dr. Flora is properly classified as a nontreating source under the regulations. 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an on-going treatment relationship with you . . ."). Consequently, the ALJ

15

was not required to articulate the reasons for the weight she accorded Dr. Flora's opinion as long as she demonstrated that she considered it. *Reeves*, 2015 WL 4231600, at *5. Here, the record supports such a finding.

Moreover, even if Dr. Flora's decision had been entitled to be weighed as that of a treating physician, the ALJ articulated good reasons for not giving it controlling weight. Specifically, she found Dr. Flora's assessment was inconsistent with her own progress notes. Based upon the inconsistency between her treatment notes and her assessment, as explained above, the ALJ decided to give it little weight.

Further, Dr. Flora noted in her treatment notes that Plaintiff, a new patient, was being seen for hypertension and anxiety, and reported Plaintiff saw Dr. Colglazier for rheumatoid arthritis. While it appears Dr. Flora prescribed acetaminophen-codeine (Tylenol #3) to treat pain associated with Plaintiff's rheumatoid arthritis, Plaintiff was to follow-up with her rheumatologist. (A.R. 425). Thus, the treatment notes do not indicate that Dr. Flora was actively treating Plaintiff for rheumatoid arthritis, and in any event do not evidence objective findings that would support the extreme limitations contained in her RFC assessment.[6]

In addition, as the Commissioner notes, Dr. Flora's assessment was not consistent with the medical record as a whole. Specifically, the medical record is devoid of any finding of joint warmth or joint deformity as noted by Dr. Flora as objective signs of her pain. (*See* A.R. 377 (no edema and no deformity of extremities); A.R. 384 (Dr. Colglazier's June 21, 2011, treatment note recorded no

---

[6]Plaintiff argues the ALJ erred in not considering the fact that her arthritis symptoms are worse in the mornings and thus her afternoon appointments with Drs. Colglazier, Smith and Flora may not demonstrate the severity of her impairments. However, it is the Plaintiff's burden to establish the disabling severity of her impairments by competent evidence at step four. *Vance*, 260 F. App'x at 804 (*citing Wilson*, 378 F.3d at 548).

bony deformities, erythema, warmth, effusion of the hands, wrists, elbows, shoulders, hips, knees, ankles, toes, full range of motion in the upper and lower extremities); A.R. 386 (Dr. Colglazier's July 12, 2011, treatment note (same)); A.R. at 388 (Dr. Colglazier's September 20, 2011, treatment note (same)); A.R. 408 Dr. Colglazier's Feb. 2, 2012, treatment note (same))).

Further, while the ALJ's decision did not address all the factors of 20 C.F.R. §§ 404.1427(c)(2), 416.927(c)(2) in weighing Dr. Flora's opinion, this was harmless error. The Sixth Circuit has held that a violation of the "good reasons rule" can constitute harmless error if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § [404.1527(c)(2) and 416.927(c)(2)]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006) (*quoting Wilson*, 378 F.3d at 547). In the last circumstance, the Sixth Circuit has held that the ALJ meets the goal of the treating physician rule when the ALJ indirectly attacks the consistency and supportability of a treating physician's opinion with other evidence of record. *Id.*

Applying this harmless error analysis to this case leads to a finding that the ALJ's error is harmless under the third circumstance. Specifically, the goals of §§ 404.1527(c)(2) and 416.927(c)(2) were met because the ALJ discussed Dr. Flora's own treatment records, which articulated medical findings contrary to Dr. Flora's opinion of disabling limitations. Thus, the ALJ explained the inconsistencies, which attacked the supportability of Dr. Flora's opinions. In addition, the ALJ's discussion of the other record evidence demonstrated that Dr. Flora's opinion did not meet the requirements for controlling weight: that the opinion be consistent with the other record

evidence and be based on sufficient data.  *See Nelson*, 195 F. App'x at 471 ("We think it clear that the ALJ's discussion of the record evidence shows that the ALJ found the opinions of [the treating physicians] to be inconsistent with the other record evidence.").  Thus, even if Dr. Flora is a treating provider, the ALJ's failure to articulate the factors considered in weighing her opinion is harmless error because the ALJ's discussion of the evidence makes clear that Dr. Flora's opinion of severe limitations was not supported by the record evidence.

As explained above, the ALJ correctly concluded that the extreme limitations opined by Dr. Flora contradicted the other medical evidence as well as her own treatment records.  Thus, the ALJ did not err in the weight accorded to Dr. Flora's assessment.

### b.    Dr. Dawson

Plaintiff argues that the ALJ erred in giving great weight to state agency physician Dr. Dawson's opinion because he did not examine her and did not have all of her medical records at the time he rendered his opinion.  (R. 7, at 6).  The Sixth Circuit has held that an ALJ does not err in considering a state agency opinion that was provided early in the administrative process and thus did not account for later assessments when the ALJ's decision demonstrates the consideration of later records.  *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *see also Thomas v. Colvin*, No. 0:14cv-129-JMH, 2015 WL 1281701, at *5 (E.D. Ky. Mar. 20, 2015); *Ward v. Astrue*, No. 09-212-ART, 2010 WL 4000247, at *5 (E.D. Ky, Oct. 12, 2010).

Here, the ALJ's decision demonstrates she considered the entire record, including records provided after Dr. Dawson January 19, 2012, assessment.   Of particular note, the ALJ specifically discussed all the medical evidence, *see* A.R. 15-17, including the evidence of Plaintiff's treatment in 2012 by Dr. Colglazier and her April 2012 appointment with Dr. Flora.  As discussed above, the

ALJ determined Dr. Flora's opinion was inconsistent with the record, not supported by the medical evidence, and given little weight. (*Id.* at 16, 21). Accordingly, since the ALJ's decision demonstrates that she considered the few records that were unavailable to Dr. Dawson, the ALJ did not err in relying, in part, on his report. (*Id.* at 15-16, 21); *McGrew*, 343 F. App'x at 32.

In support of her argument, Plaintiff cites *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 408-09 (6th Cir. 2009). However, this case is distinguishable. In *Blakley*, the court found the ALJ erred in adopting the report of state agency physicians who did not have over 300 pages of medical evidence that reflected ongoing treatment and notes by the claimant's treating sources without some indication that the ALJ had considered these facts. *Id*. Here, Plaintiff cites to limited evidence that she claims Dr. Dawson did not consider: a February 2012 treatment note from Dr. Colglazier, which was consistent with his prior treatment notes, and the treatment note of Dr. Flora's April 24, 2012, examination and February 21, 2013, RFC assessment.[7] But the ALJ's decision demonstrates her consideration of the medical evidence dated after Dr. Dawson's January 19, 2012, opinion. *See* A.R. 15-16; *also see McGrew*, 343 F. App'x at 32. Thus, *Blakley* is distinguishable, and Plaintiff's claim that the ALJ erred in relying on the opinion of Dr. Dawson that predated relevant medical evidence is without merit.[8]

---

[7]While Plaintiff references an April 2012 treatment note from Dr. Colglazier and "later records" of Dr. Smith, she did not provide a citation to the record for this medical evidence and the Court's own review of the administrative record did not reveal any treatment records from Dr. Smith after January 2012, or Dr. Colglazier after February 2012.

[8]To the extent Plaintiff argues that the ALJ erred in her consideration of Dr. Dawson's assessment because it is unclear what weight she actually gave to his opinion, this argument fails. The ALJ noted that Dr. Dawson's opinion limited Plaintiff to a range of medium work, but further explained she was diverging from that finding by limiting Plaintiff to light work. Further, the ALJ explained she was incorporating Dr. Dawson's postural and environmental limitations. Thus, it is clear from the decision how the ALJ considered and weighed Dr. Dawson's opinion, and there is no error in this regard.

19

### c.    Dr. Kershner

Plaintiff argues that the ALJ erred in her consideration of consulting examiner Dr. Kershner's medical opinion because the ALJ stated she was giving it significant weight, but yet she rendered an RFC that Plaintiff claims exceeded Dr. Kershner's medical source statement of what Plaintiff could still do despite her impairments.  Plaintiff contends that Dr. Kershner's assessment would not permit Plaintiff to perform at the light exertional level.  Specifically, Plaintiff argues that Dr. Kershner opined Plaintiff was limited to standing for one hour and walking for 10 minutes, which would preclude her from standing six hours in an eight-hour day as required to perform light work.[9] SSR 83-10.

Plaintiff has misconstrued Dr. Kershner's medical opinion.  (A.R. 394-98).  Dr. Kershner performed a consulting examination of Plaintiff on October 8, 2011.  In that report, Dr. Kershner provided a summary of Plaintiff's subjective complaints, including that rheumatoid arthritis causes her to have morning pain and stiffness in her hands, arms, right shoulder and feet, but the pain and stiffness get better throughout the day and she gets some relief from medication.  (A.R. 394).  Dr. Kershner also noted that Plaintiff complained of IBS, stating she still has 8 to 10 bowel movements a day, but explained that Plaintiff reported she has had IBS since she was 16 and takes Imodium, which helps.[10]

---

[9]Plaintiff's brief statement that her past work requires her to stand eight hours in an eight-hour day and thus exceeds the level of exertion for light work lacks merit.  (A.R. 6).  Plaintiff's past relevant work is as a cosmetologist, which the vocational expert testified was classified as light work.  (A.R. 48).  This testimony is consistent with the Dictionary of Occupational Titles, which also lists cosmetologist as being performed at the light exertional level.  *See* United States Dep't of Labor, Dictionary of Occupational Titles § 332.271-010, 1991 WL 672806 (cosmetologist).

[10]Plaintiff briefly argues that Dr. Kershner failed to incorporate any limitations for Plaintiff's IBS despite noting Plaintiff has 8-10 bowel movements a day.  However, Dr. Kershner also noted that Plaintiff had reported having this condition since she was 16 and that she takes Imodium which helps some.  While

On examination, Dr. Kershner found Plaintiff to have: normal station, gait and coordination; no clubbing, cyanosis or edema in the extremities; normal tone and strength throughout the musculoskeletal system; and no redness, swelling, spasm or tenderness. Dr. Kershner also found the joints in Plaintiff's extremities were normal without swelling and there were no rheumatologic changes apparent on exam. (A.R. 395-96). Based on her examination, Dr. Kershner provided the following medical source statement:

> The patient states that she can sit without any difficulty. She states that she can stand for about one hour and walk for 10 minutes at a steady pace before developing pain in her feet requiring her to rest and I do feel that this is an accurate assessment. She was given a 5-pound lifting restriction, which I feel might be too light. She would probably be able to lift about 20 pounds. She can drive and handle objects without difficulty. Fine motor skills are not impaired. Her communication, hearing, speaking, and reasoning are not limited. For her conditions, I would recommend rheumatologic follow-up and possible Elavil and Bentyl treatment for her IBS.

(A.R. 396).

Despite Plaintiff's argument to the contrary, Dr. Kershner did not limit her to standing for one hour or walking for 10 minutes in an eight-hour day. Instead, Dr. Kershner found Plaintiff can stand for an hour or walk at a steady pace for 10 minutes before developing pain in her feet requiring her to rest.[11] Plaintiff testified that when she feels the need to rest, she will sit down for about 10 to

---

she did not impose any specific limitations for IBS symptoms, Dr. Kershner's report demonstrates that she considered Plaintiff's IBS.

[11]Dr. Kershner's statement of "rest" does not imply Plaintiff needed a "break" every hour. Instead, the statement is in reference to Plaintiff's need to get off her feet. Moreover, Plaintiff was represented during the administrative hearing and given an opportunity to question the VE as she thought appropriate. Notably, counsel asked the VE about the availability of jobs for a plaintiff who required a 20-minute rest period for every hour she stood, and the VE responded that the light exertion job base would be reduced for such an individual, but did not testify that light jobs were precluded. Counsel did not ask about the effect of such limitations on claimant's past relevant employment. At step four, it is the Plaintiff's burden to prove she cannot perform her past relevant work.

20 minutes (A.R. 46).[12] Dr. Kershner's RFC in combination with Plaintiff's testimony of needing

to sit down for 10 to 20 minutes after activity is consistent with light exertion: "the full range of

light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday. Sitting may occur intermittently during the remaining time." SSR 83-10. Thus, Plaintiff's

argument that the ALJ erred in finding Dr. Kershner's opinion supported an RFC for a range of light

work is not supported by the record.

**B.      The ALJ did not err in her credibility determination**

Plaintiff argues that the ALJ erred in finding Plaintiff's complaints of pain and IBS symptoms

were not fully credible. Specifically, Plaintiff asserts that in discounting her testimony, the ALJ

erroneously relied on her attempt to work during the period of alleged disability and the lack of

objective medical findings, but did not discuss the other factors required by 20 C.F.R. § 404.1529

and SSR 96-7p.

It is well established that a plaintiff's subjective complaints of pain can support a disability

finding if the record contains "objective medical evidence" of a severe medical condition that "can

reasonably be expected to produce the alleged disabling pain." *Steagall,* 596 F. App'x at 381

(*quoting Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). "Even when the record contains

this evidence, however, the ALJ may also consider the credibility of the claimant's subjective

complaints." *Id*. (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003)). An

ALJ may discount a claimant's credibility when the ALJ "finds contradictions among the medical

reports, claimant's testimony, and other evidence." *Id.* (*quoting Warner*, 375 F.3d at 392). The

---

[12]As the Commissioner noted, Plaintiff reported in the questionnaires submitted in support of her
applications to needing a 10 minute rest after activity. (A.R. 243, 286, 297).

ALJ's credibility determinations-when supported by substantial evidence-are entitled to "great weight." *Id.* (*citing Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir.2007)).

Here, the ALJ found the record contains objective medical evidence of the existence of impairments that could reasonably be expected to produce the Plaintiff's pain and other symptoms, but found her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  The ALJ noted generally that she considered other factors in assessing the claimant's complaints of pain and other symptoms, including her daily activities, the nature of her symptoms, precipitating and aggravating factors, the medications and side effects, and other treatment followed and measures used to relieve the symptoms. (A.R. 20).  The ALJ specifically pointed to Plaintiff's continued work activity following her alleged onset date and lack of medical evidence supporting her claims as limiting her credibility.

Plaintiff argues the ALJ erred in discounting her statements regarding the intensity of her impairments based on a finding that she worked a reduced schedule following her alleged onset date. This argument fails.  The Sixth Circuit has held that an ALJ can consider a claimant's ability to maintain part-time employment as one factor relevant to determining whether he/she is disabled. *See Miller v. Comm'r of Soc. Sec.,* 524 F. App'x 191, 194 (6th Cir. 2013) (*citing* 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971).  As a court in this district previously held "[t]here is nothing inconsistent with finding that [plaintiff's] work did not amount to substantial gainful activity, but nevertheless considering it relevant in evaluating his credibility and RFC." *Norris v. Astrue*, 5:10-cv-127-DCR, 2011 WL 588349, at *5 (E.D. Ky. Feb.10, 2011) (*citing* 20 C.F.R. §§ 404.1571 and 404.1512(b)), *aff'd*, 461 F. App'x 433 (6th Cir. 2012); *see also Tate v. Comm'r of Soc. Sec.,* No. 2:13-cv-11473, 2014 WL 4536929, at *22 (E.D. Mich. Sept. 11, 2014)

23

(affirming ALJ's credibility finding which noted plaintiff's ability to work at some level although not substantial gainful activity was not consistent with her allegations of disabling conditions); *Fenner v. Comm'r of Soc. Sec.*, No. 3:12-cv-179, 2013 WL 2253573, at *6 (S.D. Ohio May 22, 2013) (rejecting plaintiff's argument that ALJ penalized him for attempting to work, finding "any work done during a period of claimed disability may show that a claimant can engage in substantial gainful activity") (*quoting Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988)), *adopted by* 2013 WL 3168645 (S.D. Ohio June 20, 2013); *Young v. Astrue*, No. 2:12-cv-50, 2013 WL 4456250, at *14 (M.D. Tenn. Aug. 15, 2013) ("As for the claim that the ALJ improperly relied on plaintiff's part-time employment to discredit her credibility, it was entirely within the ALJ's discretion to consider plaintiff's part-time job as a daily activity in making her credibility determination.") (*citing* 20 C.F.R. § 404.1529(c)(3)(i) (factors relevant to subjective claims include daily activities)); *adopted by* 2014 WL 3724844 (M.D. Tenn. July 25, 2014), *aff'd*, No. 14-6075 (6th Cir. Feb. 26, 2015); *Melton v. Astrue*, No. 11-305-KSF, 2012 WL 1933731, at *4 (E.D. Ky. May 29, 2012) (finding plaintiff's ability to continue working part time at a dental office undermines the credibility of the her allegations and was but one factor supporting finding that ALJ's decision supported by substantial evidence).

Plaintiff's citation to *Cohen v. Secretary*, 964 F.2d 524, 530-31 (6th Cir. 1992) is not to the contrary.[13] *Cohen* did not set forth a *per se* rule that a claimant's ability to perform part-time work is not relevant to a credibility analysis of a plaintiff's statements regarding the intensity of their

---

[13]Plaintiff also cites to *Felisky*, 35 F.3d at 1036-37, in support of her argument that she should not be faulted for working part time during her period of alleged disability. *Felisky*, however, does not discuss a plaintiff's performance of some work after her onset date as being a factor in the credibility analysis. Instead, it appears Plaintiff cited to *Felisky* for a general discussion of the factors required to be considered in a credibility analysis under 20 C.F.R. § 404.1429(c).

24

symptoms. Instead, in *Cohen*, the court concluded that the ALJ's emphasis on Cohen's ability to pass a law school exam was misplaced, because the issue of her intelligence was not determinative of the exertional impairments caused by her chronic fatigue syndrome and the other symptoms of her illness. The court also found that her sporadic activities as a professional ballroom dancer (she danced only two hours a month and required significant rest before and after dancing and eventually stopped dancing altogether), and her status as founder of a national support group for persons diagnosed with Epstein-Barr (she talked on the phone for approximately two to three hours per week and eventually withdrew from the group) did not discredit her claim of disabling chronic fatigue. Lastly, the court found that while plaintiff's ability to attend law school part-time (taking three years to complete one year) was probative of her ability to engage in substantial gainful activity, in view of the nature of her illness–chronic fatigue and Epstein Barr Syndrome–the fact she could take a few courses a semester, which permitted her to miss occasional classes without penalty, did not provide a substantial basis for concluding she had the capacity to engage in substantial gainful employment.

Here, when determining Plaintiff's credibility as to the intensity and persistence of her symptoms, the ALJ did not err in considering the work Plaintiff performed during her period of claimed disability. As discussed above, the courts in this circuit have found such consideration is appropriate. Further, in assessing Plaintiff's credibility, the ALJ did not limit her evaluation of the evidence to only that of Plaintiff's part-time work. The ALJ also considered the context of the medical evidence, including a lack of diagnostics and clinical findings, considered the opinion evidence, and considered the third-party statement of her daughter.[14]

---

[14]To the extent Plaintiff argues that the ALJ erred in discounting her credibility on the basis of the lack of objective findings alone, the decision belies this assertion. As discussed above the ALJ specifically considered Plaintiff's ability to perform work during the period of alleged disability, Plaintiff's statements to Dr. Kershner, the opinion evidence, and the third-party statement from her daughter.

The ALJ explained her credibility analysis as follows:

[Plaintiff's] work activity following her alleged onset date detracts from the credibility of the claimant's allegations as to the intensity, persistence and limiting effects of her impairments.  Although the claimant's work has not constituted substantial gainful activity, it nonetheless indicates that her impairments have not precluded her from working.  The claimant has experienced chronic diarrhea since her adolescence but managed to work with it for many years (Exhibits 17E and 1F/5).  Since her alleged onset date, the claimant has worked part-time as both a cosmetologist and a cashier.  As of September 29, 2009, over nine months after her alleged onset date, the claimant still worked twenty-four to thirty hours a week as a cosmetologist (Exhibit 2F).  She currently works a couple of hours each week as a cosmetologist.  Although her impairments, particularly her irritable bowel syndrome, have impeded her performance of these jobs, her persistence indicates that her impairments have not rendered her disabled.

Nor does medical evidence support the claimant's contention of disability.  Specifically, the record does not illustrate how the claimant's impairments have worsened to preclude her from working.  First diagnostic test results undermine the credibility of the claimant's allegations regarding the intensity, persistence and limiting effects of her impairments.  Diagnostic testing indicated that the claimant's rheumatoid factor was within normal limits (Exhibit 8F).  X-rays of her shoulders and hands were interpreted as showing no pathological changes (Exhibit 4F).  As an aside, the undersigned notes that the claimant did not mention her arthritis during her psychiatric consultative examination (*see* Exhibit 2F).  Finally, results of a colonoscopy were interpreted as showing only diverticulitis (Exhibit 1F/9-10).

A lack of clinical findings further erodes the credibility of the claimant's allegations regarding the intensity, persistence and limiting effects of her impairments.  Notable, multiple doctors have found few, if any, abnormalities with the claimant's joints.  For example, her rheumatologist Dr. Colglazier found that the claimant had "no bony deformities/ erythema/ warmth effusion of the hands/ wrists/ elbows/ shoulders/ hips/ knees/ ankles/ toes" (Exhibits 4F, 5F and 8F).  Likewise, Dr. Kershner found the claimant's joints to be normal without swelling and no rheumatic changes (Exhibit 6F).  Dr. Kershner noted normal muscle tone and strength throughout the claimant's body without redness, swelling, spasm or tenderness.  Finally, Dr. Kershner also indicated that the claimant exhibited only a slightly decreased range of motion in her shoulders.

(A.R. 20-21).

Further, the ALJ explained that she considered Plaintiff's daughter's third-party statement of the impact plaintiff's symptoms have had on her over the years.  While the ALJ stated she found

26

the observations credible, they did not warrant a finding of disability.  Plaintiff argues that because the ALJ found the evidence credible, she was required to consider the number of days Plaintiff would miss work as a result of her impairments.  The third-party statement, however, does not lead to a conclusion that Plaintiff would miss work because of her symptoms.  To the contrary, Plaintiff's daughter explained that when she was younger her mom missed many of her school events and family outings because of her gastrointestinal illness, and her mom continues to miss events now that she has grandchildren.  The ALJ's consideration of this third-party statement is consistent with her determination that although Plaintiff has had IBS since she was a teenager, she has managed to work. The ALJ did not err in her consideration of this third-party statement.

Having reviewed the record evidence, the Court finds the ALJ's conclusion regarding Plaintiff's credibility is supported by substantial evidence.  While Plaintiff has IBS symptoms, the evidence demonstrates she has been able to work with the symptoms.  She admitted to needing only a couple bathroom breaks a day when taking her medication, and Dr. Flora opined her IBS was "well controlled."  In addition, while she has joint pain and stiffness, there is no evidence that it causes her pain at the severity alleged.  The ALJ explained there is a lack of clinical findings to support Plaintiff's complaints of disabling pain.  In fact, Dr. Kershner found "[s]he can drive and handle objects without difficulty," and her "[f]ine motor skills are not impaired."  (A.R. 396).  Further, the ALJ credited Plaintiff's statement to Dr. Kershner that she can sit without difficulty and she can stand for about an hour and walk for 10 minutes before needing to rest.  (*Id.*).  The ALJ's decision demonstrates that she considered the entire case record in reaching her credibility determination. As this credibility determination is supported by substantial evidence, it is therefore entitled to deference.

C.     **The ALJ did not err in her questioning of the vocational expert**

Plaintiff briefly argues that the ALJ erred in relying on the vocational expert's response to an inaccurate hypothetical question because it did not include extra breaks Plaintiff claims she needs for her IBS symptoms and arthritis.  Plaintiff also argues that the ALJ did not include Dr. Flora's findings limiting Plaintiff in reaching and manipulating objects with her hands and fingers, which Plaintiff asserts is supported by her own testimony.  As discussed below, Plaintiff's argument lacks merit.

The regulations permit, but do not require, an ALJ to use the services of a vocational expert at step four to determine whether a claimant, given her RFC, can do her past relevant work.  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  It is well established, however, that a hypothetical question need only include those limitations that the ALJ finds credible.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Scott v. Comm'r of Soc. Sec.*, No. 1:14-cv-497, 2015 WL 4247168, at *4 (W.D. Mich. July 13, 2015) (hypothetical posed to VE for step 4 determination needed only to include limitations ALJ identified in plaintiff's RFC).

Here, the hypothetical question that the ALJ posed to the VE was consistent with the ALJ's RFC determination that Plaintiff was able to perform light work with no ladders, ropes or scaffolds, and avoiding even moderate exposure to hazards.  (A.R. 49).  The VE testified that such a person could perform Plaintiff's past relevant work as a cosmetologist.  (*Id*.).  Accordingly, the vocational

expert's testimony constituted substantial evidence to support the ALJ's determination that Plaintiff was able to perform her past relevant work.

## IV.     CONCLUSION AND RECOMMENDATION

As explained above, Plaintiff's arguments lack merit and the ALJ's decision is supported by substantial evidence.  Accordingly, **IT IS RECOMMENDED** that:

1.     The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.     Plaintiff's Motion for Summary Judgment (R. 7) be **denied**;

3.     Defendant's Motion for Summary Judgment (R. 8) be **granted**; and,

4.     Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 28th day of August, 2015.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

G:\DATA\social security\14-139 Luggen R&R.vlc.final.wpd